IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00221-WDM-OES

MOUNTAIN STATES MUTUAL CASUALTY COMPANY,

    Plaintiff,

v.

TIM KIRKPATRICK d/b/a HOG'S BREATH SALOON & RESTAURANT,

    Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the Motion for Summary Judgment (doc no 78) filed by Plaintiff Mountain States Mutual Casualty Company ("Mountain States"). Defendant opposes the motion. Upon review of the parties' filings, I conclude oral argument is not required. For the reasons that follow, the motion is granted and declaratory judgment shall enter in Plaintiff's favor.

### Background

Jurisdiction in this matter is based on diversity. 28 U.S.C. § 1332. Mountain States is an insurance company, which issued a general commercial liability policy to Defendant, a sole proprietorship. Defendant has been sued in Otero County, Colorado, District Court by Christopher Roinestad and Gerald Fitz-Gerald (the "Underlying Lawsuit"). Roinestad and Fitz-Gerald allege that they were injured while

cleaning sewers located near Defendant's restaurant.[1]  They allege that Defendant discharged cooking oil, grease, fat, and other food by-products directly into the sewer in violation of a number of city ordinances.  The sewer line emptied into the space below a manhole cover.  The plaintiffs in the Underlying Lawsuit further allege that nearly five feet of oil and grease accumulated in the manhole.  Hydrogen sulfide gas, which forms naturally from the breakdown of organic material, was then trapped in the manhole and in air pockets within the grease.  The gas is highly toxic.  When sewer cleaning commenced near the manhole on October 1, 2003, these two employees were overcome by and exposed to deadly amounts of the gas released from the manhole.  Both plaintiffs survived, but allege that they incurred injuries, damages, and losses.  Their claims include negligence and negligence *per se* for violation of city ordinances which prohibit, *inter alia*, discharge of "viscous pollutants" and "pollutants which result in the presence of toxic gases, vapor or fumes."

Defendant requested defense and indemnity from Mountain States pursuant to the policy.  Mountain States accepted the defense of Defendant under a reservation of rights but filed this action seeking a declaration that defense and indemnity coverage for the Underlying Lawsuit is barred by the policy's pollution exclusion.  This provision excludes coverage for:

> '[B]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

---

[1]For the purposes of this order, the facts in the Underlying Lawsuit are taken from the First Amended Complaint, filed November 4, 2005, in that case.

    A. At or from any premises, site, or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    B. At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   \* \* \*

   Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Mountain States has filed a motion for summary judgment, arguing that the undisputed facts demonstrate that the oil, grease, and food by-products, as well as the hydrogen sulfide gas, are "pollutants" under the exclusion.

### Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Id.*

## Discussion

The federal declaratory judgment statute, 28 U.S.C. § 2201 vests a district court with the authority to declare the rights and other legal relations of any interested party in "a case of actual controversy" within the court's jurisdiction.  This authority should be exercised at the court's discretion, considering such factors as "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."  *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (citation omitted).

Under Colorado law, which the parties agree applies here, "a judgment against the insured in the underlying case is not an absolute prerequisite to the filing of a declaratory judgment action to determine coverage."  *Constitution Assoc. v. New Hampshire Life Ins. Co.,* 930 P.2d 556, 558 (Colo. 1996).  An anticipatory declaratory judgment action must be based on an actual controversy, should fully and finally resolve the uncertainty and controversy as to all parties with a substantial interest in

the matter, and should be independent and separable from the underlying action. *Id.* at 561.

I will first address whether the circumstances are appropriate for a declaration of the parties' rights and obligations under the policy. First, there is clearly an actual controversy, as Defendant is engaged in active litigation in the Underlying Lawsuit. Second, determination of the scope of the pollution exclusion would serve a useful purpose in clarifying the legal relations at issue and potentially save the expenditure of significant funds by Mountain States. Third, there is no evidence that Mountain States has filed this action for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*;' it wishes the duty to defend to be determined as a matter of law and no findings of fact will enter. Because of this, the issues are independent and separable from those in the Underlying Lawsuit and will not improperly encroach upon state jurisdiction. Finally, while Mountain States could certainly seek a similar declaration in the state court, there is no indication that this remedy would be better or more effective. I do note, however, that the injured plaintiffs in the Underlying Lawsuit, who may have an interest in the outcome of this proceeding, have not been named as parties and may not be bound by the determination made here.

I now turn to the merits of the motion. "An insurance company is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. American Family Mut. Ins. Co.,* 788 P. 2d 748, 750 (Colo. 1990). Words in the policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative

5

interpretation is intended.  *Id.*  If a contractual provision is ambiguous, that is, if it is reasonably susceptible to different meanings, it must be construed against the drafter and in favor of providing coverage to the insured.  *Id.*

An insurer seeking to avoid a duty to defend has a "heavy burden."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).  If the insurer claims that coverage does not exist because of an exclusion, the insurer "must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation."  *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991).  "An insurer is not excused from its duty ot defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured."  *Id.*  The duty to defend is determined by looking at the allegations of the underlying complaint against the insured and extrinsic evidence is not to be considered.  *Compass*, 984 P.2d at 615.  Nonetheless, ambiguity should be determined based on the facts and circumstances presented in a particular case.  *TerraMatrix, Inc. v. United States Fire Ins. Co.,* 939 P.2d 483, 487 (Colo. App. 1997)

Mountain States argues that the kitchen grease and other by-products, as well as the resulting hydrogen sulfide gas, are "waste" and "contaminants" and therefore fall within the pollution exclusion.  I agree that there is little question that the substances allegedly discharged into the sewer by Defendant are waste products, as that word is commonly defined and understood.  However, as I read the exclusion, "pollutant" is defined primarily as an "irritant or contaminant," which could be in a variety of forms or

states, including smoke, vapor, or waste.[2]  Accordingly, the key issue is whether the kitchen waste is also a contaminant or irritant.

Mountain States offers standard dictionary definitions of "contaminant" and "contaminate," specifically : "1a: to soil, stain, corrupt, or infect by contact or association; b: to make inferior or impure by admixture; 2: to make unfit for use by the introduction of unwholesome or undesirable elements." Merriam-Webster's Collegiate Dictionary, p. 249 (10th ed. 1996).  Mountain States argues that the grease and food by-products were a contaminant because "they are unwholesome or undesirable elements that made the sewer system unfit for use." Opening Brief at 13.  It also contends that the hydrogen sulfide gas qualifies as pollutant.  Finally, it notes that the complaint in the Underlying Lawsuit specifically alleges that the oil and food by-products were "pollutants" under the applicable city ordinances.

I agree with Mountain States that under the plain meaning of the words and in the context of the facts and circumstances alleged in the Underlying Lawsuit, the kitchen waste constitutes a contaminant, and therefore a pollutant as defined in the policy.  In this circumstance, I conclude that "contaminant" is not ambiguous.  The

---

[2]For example, if the terms "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste" were considered to be pollutants, without qualification, an enormous number of substances not commonly understood as pollutants would presumably fall under this exclusion, including water vapor, vinegar, and any number of ordinary household items.  Even a slip and fall on a piece of trash or liquid containing chemicals could be excluded under this reading of the exemption.  Moreover, as noted by the court in *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.,* 35 F.3d 494, 498 (10th Cir. 1994), even the terms "irritant" and "contaminant" are "virtually boundless" since nearly any substance can cause some irritation or damage to property under the right circumstances.

grease and oil, in the quantities allegedly at issue, are substances which "soil, stain, corrupt, or infect" by contact and made the sewer unfit for use . In addition, at least as alleged in the Underlying Lawsuit, by putting these substances in the sewer, Defendant's actions could constitute the discharge, dispersal, release, or escape of pollutants. Since all of the harm in the Underlying Lawsuit is alleged to have resulted from this conduct, the duty to defend does not arise.

In response, Defendant argues that making a determination in this regard will prejudice his rights in the Underlying Lawsuit, apparently because Mountain States has refused to produce its claims file. Mountain States filed a motion for a protective order in this action seeking to prevent Defendant's discovery of the claims file. In the motion, Mountain States argued that it had kept the coverage dispute and Underlying Lawsuit defense files separate and disclosure could result in the release of unfavorable information in the Underlying Lawsuit. However, if the declaration is issued in favor of Mountain States' interpretation of the policy, the matter will be concluded and Defendant should be able to use discovery tools in the Underlying Lawsuit to obtain the claims file. In addition, as discussed above, since this matter can be determined as a matter of law from the face of the complaint in the Underlying Lawsuit, Defendant does not have to take a position in this lawsuit that could undermine any issues in the Underlying Lawsuit. Accordingly, I discern no prejudice.

Defendant also argues that the definition of "pollutants" is not intended to extend to the "normal by-products of a restaurant" but offers no argument or authority to show why these would not fall into the relevant definition. In addition, Defendant makes a

number of arguments that require me to look beyond the four corners of the complaint, including to evidence that hydrogen sulfide gas is naturally produced in sewers or that other parties may have been responsible for introducing the offending substances. Under the applicable legal standards, I cannot consider these extrinsic facts. In addition, Defendant cites case law for the proposition that material applied for a "beneficial use" might fall outside of a pollution exclusion. *Metro Waste Water Reclamation Dist. v. Continental Gas Co.,* 834 F. Supp. 1254 (D. Colo. 1993). However, this argument again goes beyond the face of the complaint and is not supported by the alleged facts in this case; it cannot seriously be contended that excess cooking grease dumped into a sewer is being put to a beneficial use. Defendant also argues that under *Compass*, disposal of sewage in an containment area does not constitute "discharge, dispersal, release or escape" pursuant to an applicable pollution exclusion. 984 P.2d at 617. Again, however, this holding is inapplicable to the facts of this case, as a sewer system is not a containment area.

Defendant also argues that the policy is ambiguous, conclusorily asserting that garbage and food by-products are not normally considered to be contaminants, but does not offer an alternative meaning that could reasonably be applied here.[3]

---

[3]At least one Colorado court, in construing a similar provision, found that ammonia vapor, a substance that is hazardous or regulated, qualifies as a pollutant, but that the plain language of an absolute pollution exclusion is not limited solely to environmental or industrial contexts. *TerraMatrix*, 939 P.2d at 488. Defendant appears to argue that toxicity is required for a substance to be a pollutant, but I disagree. While clean cooking oil may not be toxic when used as a food, it would still be considered a contaminant when introduced in large quantities into drinking water or other places it does not belong. Moreover, it appears to be regulated in that, according to the complaint in the Underlying Lawsuit, city ordinances require grease traps and other

Defendant contends that the reasonable expectations of a restaurant owner in these circumstances should be considered.  However, since I find the provision to be unambiguous, the reasonable expectations doctrine does not apply.  *Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265 (Colo. App. 1996) (reasonable expectations doctrine supplements but does not substitute for the rule that insurance policies are to be considered according to well-settled principles of contract construction and so is inapplicable where policy provisions are unambiguous).

      Accordingly, it is ordered:

1. Plaintiff's Motion for Summary Judgment (doc no 78) is granted.
2. Under the terms of the applicable policy, Mountain States is not required to indemnify Defendant or provide Defendant with a defense for the claims asserted against Defendant in the Underlying Lawsuit.
3. Plaintiff may have its costs.

      DATED at Denver, Colorado, on August 30, 2007.

                                BY THE COURT:

                                s/ Walker D. Miller
                                United States District Judge

---

preventative measures be taken to prevent its release into the environment.